IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DWAYNE EDWARD TATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13–CV–70 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Dwayne Edward Tate ("Tate") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Tate alleges that the Administrative Law Judge ("ALJ") committed numerous errors regarding his mental impairments, including giving improper weight to opinion evidence, improperly discrediting Tate's testimony, and failing to consider the combined effect of his impairments. I conclude that substantial evidence supports the ALJ's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Tate's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

2001). This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tate failed to demonstrate that he was disabled under the Act.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[3] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"),

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

2

considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## CLAIM HISTORY

This is Tate's second claim for disability benefits. Tate's first claim alleging disability starting in 2004 was denied by the Commissioner in 2009, a decision later upheld on appeal by this Court. Tate v. Astrue, 1:11CV00011, 2011 WL 5117763 (W.D. Va. Oct. 27, 2011). Tate re-filed for SSI and DIB on July 22, 2009, claiming that his disability began on September 30, 2006. R. 12, 233, 244. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 12, 157–171. On November 16, 2011, Administrative Law Judge ("ALJ") Jeffery J. Schueler held a hearing to consider Tate's disability claim. R. 28–67. Tate was represented by an attorney at the hearing, which included testimony from Tate and vocational expert Barry S. Hensley, Ed.D. R. 28–67. Tate amended his date of alleged onset at the hearing for the present claim to March 11, 2009. R. 12, 34–35.

On December 14, 2011, the ALJ entered his decision denying Tate's claims. R. 9–22. The ALJ found that Tate suffered from the severe impairments of degenerative disc disease, osteoarthritis, major depressive disorder, and anxiety disorder. R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. The ALJ found that, in addition to being physically limited to light work and other physical restrictions,[4] Tate could only perform simple, routine, repetitive tasks in a low stress, consistent environment in which he can only exercise occasional decision making.

---

[4] Tate was further restricted to lifting no more than 15 pounds occasionally; standing and walking no more than 1 hour in an 8-hour workday; sitting no more than 1 hour at a time in an 8-hour workday with the option to stand at hourly intervals; occasionally climb 4–6 foot stairs and ramps, balance, stoop kneel and crouch; should

3

R. 17. The ALJ found that Tate would require close supervision twice daily by a supervisor, and should only occasionally interact with the public. R. 17. The ALJ determined that Tate could not return to his past relevant work as an industrial spray painter (R. 20), but that Tate could work at jobs that exist in significant numbers in the national economy, including production inspector, hand packer, and mechanical assembler. R. 21. Thus, the ALJ concluded that Tate was not disabled. R. 21. On January 22, 2012, the Appeals Council denied Tate's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Tate generally asserts that the ALJ's decision is not supported by substantial evidence. I discern three arguments Tate puts forth in support of his position. First, Tate contends that the ALJ gave improper weight to the opinion of a treating psychologist regarding the severity of his mental impairments. Second, Tate challenges the ALJ's evaluation of Tate's credibility. Third, Tate argues that the ALJ failed to properly consider the cumulative effect of his mental impairments with his physical impairments, as directed by the regulations. I find that substantial evidence supports the ALJ's decision on each ground, and recommend affirming the final decision of the Commissioner.

### Treating Physician and Mental Impairments

Tate alleges that the ALJ failed to adequately probe Tate's mental impairments and failed to give proper evidentiary weight to the opinion of Tate's treating psychologist, Robert W. Smith, Ph.D., LCP. Tate made four visits to Dr. Smith at the Brock Hughes Free Clinic ("Free Clinic") in 2011 and 2012, and Dr. Smith completed two "check the box" forms in October 2011 outlining his opinion of Tate's work-related functional ability. The first, completed on October

---

never climb ladders, ropes, or scaffolds; or, be exposed to concentrated heat cold, wetness, humidity, irritants, chemical and machinery hazards. R. 17.

21, 2011, indicated that Tate had a good ability to relate with co-workers; a fair ability to follow work rules, use judgment, interact with supervisors, and deal with work stressors; and poor or no ability to deal with the public, function independently, and maintain attention or concentration. R. 354. Dr. Smith further found that Tate had a good ability to understand, remember, and carry out instructions. R. 355. Dr. Smith also noted that Tate had poor or no ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and a fair ability to demonstrate reliability. The form contains no elaboration other than a brief note that Dr. Smith suspected borderline intellectual functioning or mental retardation, bizarre thoughts, and attention limitations. R. 355.

On October 27, 2011, Dr. Smith completed a medical evaluation form for the Virginia Department of Social Services. R. 357–58. Dr. Smith indicated that, due to a cognitive disorder, Tate was unable to work in any capacity for a period greater than 90 days, a conclusion which was to be re-checked in a year. Dr. Smith noted several work related limitations in areas such as cognition, interpersonal relationships with co-workers, memory, organization, and directed activity. R. 358. Dr. Smith did indicate that Tate had the capacity to participate in a number of job skills development activities.[5]

Additionally, on November 15, 2011, Dr. Smith wrote a short letter to Tate's disability attorney regarding a report from Tate's prior disability claim. R. 380. The report, prepared by Pamela S. Tessnear, Ph.D., in April 2006, suggested that Tate had work-related limitations as a result of anxiety and depression. R. 486–94.[6] Without elaboration, Dr. Smith wrote that he

---

[5] These include classroom based activities leading to a GED or other certification; educational activities that address job etiquette, social skills, positive job behaviors, etc.; skills training in an occupation within his health related limitations; resume writing and practice in completing job applications; participating in mock job interviews; and job searching.

[6] The ALJ in the previous claim gave Dr. Tessnear's opinion little weight, a decision the District Court found to be supported by substantial evidence on appeal. Tate v. Astrue, 1:11CV00011, 2011 WL 5117763, at *5

agreed with Dr. Tessnear's findings and conclusions to the extent that Dr. Tessnear's report supports Tate's disability and an inability to work. R. 380.

The ALJ accorded "little weight" to Dr. Smith's opinions, finding them inconsistent with other medical opinions, unsupported by treatment records, and internally inconsistent. R. 19–20. I find that substantial evidence supports this decision.

The social security regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citations omitted).

The medical records show that Tate has a history of depression and anxiety for which he received only occasional treatment. For the year following the alleged onset date of March 11, 2009, there are no mental health treatment notes in the record. On May 24, 2010, licensed

---

(W.D. Va. Oct. 27, 2011). At oral argument in this case, Tate conceded that he was not relying on Dr. Tessnear's report for the instant claim, other than as a part of Tate's psychological history.

6

clinical psychologist Angelia Berry, Psy. D. conducted a consultative psychological evaluation of Tate. R. 346–51. Dr. Berry noted in her report that Tate's credibility regarding his symptoms was "questionable" due to his evasiveness and lack of motivation during his mental status examination. R. 349–50. For example, although Tate's working memory screening showed significant impairment, Dr. Berry explicitly questioned the reliability of the results. Dr. Berry further wrote that "Mr. Tate appeared to endorse every symptom presented to him, including highly unlikely combinations of psychotic symptoms." R. 350. Dr. Berry diagnosed Tate with major depressive disorder, recurrent, moderate and a Global Assessment of Functioning (GAF) of 67.[7]

Dr. Berry concluded that Tate was likely capable of understanding simple directions, but may have some deficits with directions containing more detail and complexity. R. 350. Furthermore, Dr. Berry found that Tate's symptoms may "mildly impair Mr. Tate's ability to cope effectively with daily stressors, and coping ability may decline further during depressive [sic]." R. 350. Dr. Berry did not expect Tate to have problems interacting with others, his judgment and decision-making skills appeared adequate, and his comprehension and performance were not likely to be significantly impaired. Dr. Berry recommended resuming outpatient counseling and continued medication management.

On June 25, 2010, state agency psychologist Richard J. Milan, Jr., Ph.D. reviewed the evidence of record, including Dr. Berry's consultative opinion, as part of Tate's disability claim. R. 127–41. Dr. Milan concluded that Tate

---

[7] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994) ("DSM IV"). A score of 61–70 suggests mild symptoms or some difficulty in social, occupational, or school functioning. Id.

7

would have difficulty sustaining performance of detailed tasks, given his overall
mental state; however, objectively the claimant is capable of understanding,
recalling, and carrying out simple, routine tasks with minimal social demands
over a normal workday/workweek.

R. 138.

The medical records are again silent for more than a year from June 2010 until July 2011 when Tate underwent an initial counseling assessment with social worker Valarie Lamb at the Mount Rogers Community Services Board. R. 370–77. Tate appeared severely depressed, reported continued anxiety, and was assessed with a GAF score of 50.[8] R. 376. Tate told Ms. Lamb that he was not taking any medication because he could not afford them. R. 375. Ms. Lamb recommended that Tate participate in group therapy and encouraged him to take medication prescribed from the Brock Hughes Free Clinic ("Free Clinic").

Tate began seeing licensed clinical psychologist Robert W. Smith, Ph.D. at the Free Clinic starting October 13, 2011. R. 362. Dr. Smith noted Tate's disorganized and bizarre appearance and suspected that Tate's IQ was at the level of borderline intellectual functioning. Dr. Smith assessed a GAF score of 45, and noted a neutral mood and affect. Dr. Smith diagnosed Tate with a cognitive disorder and personality disorder. Tate again saw Dr. Smith on October 20, 2011. R. 361. The treatment record from this visit is sparse, reflecting an unexplained GAF score of 45, identical diagnoses, and a description of Tate's thought process as "bizarre."

At Tate's next visit with Dr. Smith on October 27, 2011, Tate reported that he was "doing ok." R. 360. Dr. Smith again noted a GAF score of 45 and a neutral mood and affect. Tate at that time was properly oriented, although Dr. Smith observed that his "episodic comments of violence are noteworthy." On November 3, 2011, family nurse practitioner Andrea Rupe filled out a medical evaluation form, indicating that with a primary diagnosis of depression, Tate was

---

[8] A score of 41–50 suggests serious symptoms or serious impairment in social or occupational functioning. DSM IV.

8

unable to work. R. 367. Ms. Rupe did not suggest limitations in cognition and interpersonal relationships, and indicated that Tate would require additional evaluation by a mental health provider to determine Tate's current or future work capacity. R. 368.

On March 30, 2012, Tate saw a nurse practitioner at the Free Clinic and again reported feeling depressed. R. 601. Treatment notes indicate that Tate was again homeless at the time, and that Tate appeared anxious and depressed. Tate's final visit with Dr. Smith came on April 18, 2012. R. 609. Tate complained of being homeless and expressed verbal agitation towards others. Dr. Smith assessed Tate with an improved GAF score of 70 on April 18, 2012 and found his mood and affect to be within normal limits. Dr. Smith asked to see Tate the following month, but no record documents any additional psychological treatment.

Based on this record, I find that the ALJ's decision to accord Dr. Smith's opinion little weight is supported by substantial evidence. At the crux of the ALJ's decision are the competing opinions of treating psychologist Dr. Smith, which the ALJ gave little weight, and consultative examiner Dr. Berry, which the ALJ gave great weight. R. 19. "[W]here there are conflicts in the evidence and differing medical opinions, ALJs have the duty to resolve those conflicts and the corresponding ability to disagree with a medical opinion, so long as substantial evidence supports the position the ALJ takes." Woodhouse ex rel. Taylor v. Astrue, 696 F. Supp. 2d 521, 533 (D. Md. 2010).

First, Dr. Smith's opinions and treatment records appear to be internally inconsistent in some meaningful ways. Dr. Smith indicated without explanation that Tate would be unable to work due to a cognitive disorder, but would be able to engage in a wide range of job search training, including things like classroom based learning and job skills training. R. 357–58. Dr. Smith also conflictingly found that Tate had "poor or no" ability to behave in an emotionally

9

stable manner or relate predictably in social situations, but also that Tate had a good ability to relate to co-workers. R. 354–55.  Moreover, Dr. Smith's opinions contain little to no elaboration on "check-the-box" style forms. "Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician." Leonard v. Astrue, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir.1993)).

Substantial evidence also supports the ALJ's finding that Dr. Smith's conclusions about Tate's functional ability were not supported by Dr. Smith's own treatment records. Many of the records simply document Tate's subjective complaints, or state diagnoses containing no elaboration about related functional limitation. "Plaintiff's statements to physicians by way of history or complaint do not constitute objective medical evidence, and the recording of a claimant's complaints by a physician does not transform those complaints into objective clinical evidence." King v. Barnhart, 6:04CV00053, 2005 WL 3087853, at *4 (W.D. Va. Nov. 16, 2005) (citing Craig v. Chater, 76 F.3d 585, 590 n. 2 (4th Cir.1984)). Moreover, the mere diagnosis of depression or cognitive disorder is insufficient to establish disability; there must be a showing of corresponding functional loss that precludes the claimant's ability to work. Newberry v. Astrue, 2:08CV00049, 2009 WL 2058870, at *6 (W.D. Va. July 13, 2009). The ALJ was entitled to accord lesser weight to the opinion of Dr. Smith for these reasons.

Finally, Dr. Berry's thorough consultative examination stands in stark contrast to Dr. Smith's determination that Tate is unable to work. Dr. Berry found that Tate's comprehension and performance were not likely to be significantly impaired, and that Tate was not expected to have difficulty interacting with others. R. 350. Dr. Berry expressed concern that Tate exaggerated the disabling nature of his mental impairments, particularly in light of Tate's

10

unlikely endorsement of every symptom presented to him, even those unlikely to be associated together.[9] Although Dr. Berry was not a treating psychologist, her opinion is well-reasoned in light of her examination of Tate and is supported by the record. For these reasons, I find the ALJ's decision to accord Dr. Berry's opinion more weight than Dr. Smith is supported by substantial evidence.

### Credibility

Tate asserts that the ALJ improperly discounted the credibility of Tate's statements that his impairments rendered him functionally unable to work. Specifically, Tate argues that the ALJ erred in relying on discrepancies between Tate's testimony and reported activities of daily living as a basis for finding Tate not disabled. The ALJ found that Tate's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the…[RFC]." R. 19. I find that substantial evidence supports the ALJ's evaluation of Tate's credibility.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Contrary to Tate's argument, a claimant's activities of daily living are a highly probative factor in determining the credibility of Tate's allegations. See, e.g., Dolfax v. Astrue, 7:09-CV-67-FL, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986)).

---

[9] I note that Dr. Berry's concerns regarding exaggeration and motivation were shared by Dr. Tessnear in her 2006 evaluation of Tate. R. 491–93.

11

While there may be innocent explanations for the ALJ's perceived discrepancies in Tate's statements, they are unexplained discrepancies in the record nonetheless that reflect on the reliability of Tate's testimony. More importantly, the ALJ did not merely rely on Tate's activities of daily living in finding Tate's allegations not credible. The ALJ's opinion also notes Dr. Berry's concerns regarding credibility, motivation and effort during her mental status examination of Tate. R. 18. This no doubt calls into question Tate's credibility, and was evidence properly considered by the ALJ in rendering his decision. Furthermore, it is not as though the ALJ completely rejected Tate's allegations of functional limitation. The ALJ crafted a highly restrictive RFC that requires a job with low stress, only occasional decision-making, with close supervision and only occasional interaction with others. R. 17. Accordingly, I find that substantial evidence supports the ALJ's credibility determination.

## **Cumulative Effect of Impairments**

Tate contends that he is disabled due to a combination of impairments, and the ALJ "failed to analyze the cumulative effect of all of his medical problems." Pl.'s Br. Summ. J. 12. I find that the ALJ properly considered the combined effects of Tate's impairments, both mental and physical.

Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ

12

must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)).

"[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011). Here, the ALJ explicitly found in his opinion that Tate did not have an impairment or combination of impairments that met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 15. Furthermore, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Tate's alleged physical and mental impairments when developing an RFC and finding Tate not disabled. Indeed, the ALJ incorporated an array of exertional and nonexertional limitations in Tate's RFC (R. 17) and the ALJ's hypothetical questions to the vocational expert addressed all of these limitations. R. 56–60. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Tate's impairments as supported in the record, providing restrictions that are both mental (e.g. "low stress job with only occasional decision making") and physical (e.g. "claimant cannot lift more than 15 pounds occasionally"). R. 19. Tate fails to state with any degree of precision how the restrictions provided for in the RFC neglect to address any combined impact of Tate's mental and physical impairments. Therefore, I find that the ALJ did not fail to analyze the combined effect of Tate's medical problems.[10]

---

[10] For the similar reasons, Tate's contention that the ALJ failed to make an individualized consideration of Tate's mental impairments pursuant to Social Security Ruling 85-15 is without merit. Tate does not identify with any specificity how the ALJ erred in this respect and puts forth no restrictions that the ALJ failed to include in his RFC.

13

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: July 8, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge